is Joginder Singh v. Mukasey, and I'm not very good at pronouncing names. Yes, you may proceed. Good morning. If it may please the Court, my name is Feng Li, counsel for the Petitioner, Mr. Joginder Singh. Before I begin, I would like to request three minutes for rebuttal. Okay. Before you begin, Mr. Li, let me ask you a question. We have a motion from the government to remand this case. Are you you have filed an opposition to that? That's correct. I just wondered if you had talked to the government about the possibility, if you two had gotten together to talk about the possibility of the terms of a remand. It's kind of unusual for the government to come in and ask that an immigration case be remanded. We haven't really. You haven't really. Okay. Okay. Go ahead. Okay. Thank you. Today, Mr. Joginder Singh would like to request that the Court find the issues of the one-year bar in his favor and remand this case to decide relief based on the merits. First, Mr. Singh, you should be found credible because the Board has explicitly has failed to make an explicit adverse credibility finding. In the Board's decision on page 25 of the AR, the only mention of credibility is when it states that, moreover, assuming the applicant's credibility has failed to establish that he's more likely, a likely, a likely, he has failed to establish as a burden of proof, essentially. This is far from explicit adverse credibility finding. In this case, the Board has either, one, implicitly overturned the IG's adverse credibility finding because they refused to affirm the IG's finding, and this is a case that the Government agrees with on page 16 of its opening brief, or two, the Board has implicitly found Mr. Singh credible by declining to find otherwise. Either way, the law of this Court is clear. Absent an explicit credibility finding, Mr. Singh is credible and his testimony should be deemed true. Therefore, Mr. Singh requests that on remand, the issue of credibility is closed in his favor, and the Government should have an opportunity to relitigate that issue. The Government shouldn't or should? Shouldn't. Shouldn't. Shouldn't. Well. And the second issue is a one-year bar issue. Mr. Singh concedes that he didn't file within a one-year bar, but he should be excused because he established both extraordinary and changed circumstances. I'd like to address the extraordinary circumstances exception first. In this case, the facts underlying Mr. Singh's extraordinary circumstances claim are undisputed, and therefore, this represents a mixed question of law and fact that this Court can review under Ramadan. In this particular case, it's undisputed that Mr. Singh arrived in the United States on a B-2 visitor visa that was valid from February 18th of 2000 to July 17th of 2000. That he had filed for a six-month extension. That he had heard nothing in return. And that he had exercised due diligence in attempting to comply with immigration regulations. What were the extraordinary circumstances? Extraordinary circumstances in this case are that he had attempted in good faith to maintain his immigration status, but to no fault of his own, he had heard nothing in return. And this uncertainty regarding his status caused a delay in his filing. What caused the uncertainty again? The fact that he never, after he filed an extension, he didn't receive any reply from the service. So he had come here legally. But what did he say at the hearing? Is that what he said? I thought that he thought that he hoped that conditions would improve. And that's why he didn't satisfy, that's why he didn't file. He was hoping that things would get better. I think that's the changed circumstances part of his exception. For extraordinary circumstances, one of the exceptions under 208.4 is that if someone maintains legal status while they're in the United States. What are the changed circumstances? The changed circumstances in this instance is that, as he testified, when he arrived here, he had hoped that things would get better in India so he could return. This is just a guess about political conditions in India. Can you repeat that, please, Your Honor? Is he just guessing about political conditions in India? I think in this particular instance, this was basically his last hope, because he's already tried to flee from India twice. He's, as he testified, he originally came here on a tourist visa because he was hoping conditions would get better. But do you really think that waiting for things to get better is an extraordinary circumstance? I think, I mean, the extraordinary circumstances argument is simply that the regulations allow someone to file within the one-year deadline if they maintain legal status. And it's not an attempt in a good faith effort to extend their status through no fault of their own. Extraordinary circumstances would be something like, okay, you're in the hospital and you can't do that, or, you know, say you're on your way to the courthouse, you get in an accident and so you're over. But hoping that things would change, if that were the case, then everything would be extraordinary circumstances, which that can't, the difference between extraordinary and ordinary has to have some meaning. As I understand it, Your Honor, extraordinary circumstances simply just relates to any event or factor that directly relates to your failure to file within the one-year bar. But his extraordinary circumstances that he hoped that things would get better and they didn't, right? His extraordinary circumstances argument is that he had attempted to maintain his legal status with the United States. Under 2.4, as I've stated, if you maintain legal status with the United States, you're allowed to, you're excused from the one-year bar. And here, when he initially arrived legally, he had attempted to maintain his status by filing for extension. And the uncertainty regarding the status of his extension directly related to why he didn't file in time. As for changed circumstances, he initially came here hoping things would get better, but as the documents state, in May of 2001, war was emanating between Pakistan and India, and at this moment, he realized that he couldn't return safely again. So the regulations provide that once conditions in a person's country change, then they should have a reasonable period of time to file after that. So he's arguing that based on a mid-war, he should be able to. Okay. Let me ask you a question about the withholding claim. Is it do you read the immigration judge's decision as resting on a determination of lack of credibility? I think the immigration judge's finding is unclear in this case. It seems that the immigration judge raises doubts about his credibility, but never explicitly makes one. So it seems like he denied it on credibility. I never got to the past persecution claim. You never got to past persecution? Yes, Your Honor. So we'd like to reserve credibility for it. Good morning, Your Honor. Teri Skadron representing the Respondent. It appears that the parties are in agreement that if the Court finds it necessary to reach the merits of the withholding claim, the case should be remanded. On that point, I'd just like to note that our position is that there is not a sufficient basis for the Court to conduct review of the withholding determination. There are real tenory concerns here. You're asking for a remand on the withholding? Yes, Your Honor. The two issues that the Court – well, the one issue the Court must reach is the issue of whether it has jurisdiction to review the asylum timeliness determination. Should it find that it does have jurisdiction, the Court then would go on and review that. No, I think you've heard all of us doubt that there are extraordinary circumstances. I agree completely with the way it was phrased by one of my colleagues. Guessing about political conditions in India is not an extraordinary circumstance. You've won that part of it. Okay. And I won't take the Court's time arguing that. Good. Okay. But I will raise the issue of jurisdiction because we do not believe that the case is controlled by Romadin. There is a disputed question of fact as to what was the catalyst for Mr. Singh to file his asylum application. And Romadin only holds that there is jurisdiction under the REAL-ID Act if there is an undisputed question of – there are undisputed questions of fact relating to changed conditions in the applicant's home country. What's the dispute here? The dispute is what was the reason why Mr. Singh delayed in filing his application? Now, he's arguing before – he argued before the Board and he's now arguing before this Court that he was waiting for conditions to change and then there were materially changed conditions in May 2001 when there were tensions between Pakistan and India. Now, that's not the argument that he made before the immigration judge. Before the immigration judge, he argued that he was waiting for conditions to change and he was unaware of the one-year bar. But there weren't any disputes before the immigration judge, were there? He may have changed his position, but that doesn't mean that we – because we have to review what the immigration judge and the BIA – That's correct. That's correct, Your Honor. We agree with that. So potentially this is not even a changed circumstances case. Perhaps all that we're looking at is an extraordinary circumstances case. Again, though, it would be outside the Romadin holding because Romadin did not address the extraordinary circumstances prong. Well, you'd be happy if we just said as a matter of law that these aren't extraordinary. Wouldn't you? You want to go all the way and say, well, in this circumstance, this is a question of fact and therefore we lack jurisdiction and – Well, the jurisdictional holding is important to the government. Is this really a good case for that? It's not the best case, I would say, because this was briefed pre-Romadin. There's been an awful lot of case law since August 2005 when we submitted our brief. And, you know, there's – this is not – we would agree that this is not the vehicle for the court to issue a fulsome decision on the jurisdictional question. But I'd just like to add that our position, and you may have seen it in other government briefs, is that the extraordinary circumstances prong is a discretionary determination which is outside of 242A2D. Now, if the court finds that it has jurisdiction, we would submit, for the reasons the court itself has raised here, that it should affirm the agency determination. And with respect to timeliness, there's no question that the board adopted and affirmed the immigration judge's determination. Now, that brings us – we have withholding merits out of the way. We have asylum timeliness. That raises the issue of what the court should do with respect to the adverse credibility determination. Right. Now, this is very odd. The IJ, as I read it, just decided that he wasn't credible. And that's what the petitioner has argued, too. We agree. And the BIA had said, well, assuming he's credible, we agree with the other reasons given. Does that mean they reversed the credibility, or we don't know? Well, I don't think that we have a clear foundation to say one way or the other. Now, on the other hand, the board, in addition to that, said that it was adopting the immigration judge's decision. Yeah. So this is all very mixed up. So why wouldn't we just say the BIA didn't give – wasn't – the decision wasn't supported by substantial evidence, or something like that? The court has two options here. Either it can conduct a substantial evidence review of the adverse credibility determination given that the board did say that it was adopting the IJ's decision, or it can just send the case back and – for clear exposition as to what the court – board intended to do. That's – But the BIA said, assuming – assuming he's credible, we agree with the other reasons, and there weren't any other reasons. So this is – I mean, you want a second bite at the apple for the BIA to be able to do it right. Are you entitled to that? Well, we're not asking for a second bite at – we're asking for an opportunity for the board to provide a better basis for this court to review the final agency determination. I mean, to eliminate the ambiguity that's left by its decision. Well, from your perspective, is it absolutely clear that the BIA did not adopt the adverse credibility, you know, finding or – I mean, I'm hearing you argue saying they adopted it, but then they said, assuming, you know, kind of double-barreling it. Assuming that that doesn't stand up, we still think that here's another justification. Your Honor, we took the position in our brief that the board did not endorse the adverse credibility finding. I would say that on further review, there is room for finding that it did because of the adoption language, and that the assuming portion of the board's decision was an alternative holding, one that was not fulsomely explained. I think you were right on the nose when you said we ought to send it back. Let them clarify it. It's very obvious from your own brief and now a different position that it wasn't clear. We have been – I believe both parties have been shifting positions the closer we get to the argument date here. Right. Right. That's why I wondered why – that's why I asked whether I should talk. I mean, I guess I'm still troubled by the fact that if they didn't do it right, why should we send it back to have them clarify and do it again? Well, ultimately, if the court sends it back to the board to – and the board reviews the issue of credibility, if the board doesn't endorse the credibility finding, there's a very strong chance this case will get remanded back to the immigration judge, in which case the record should be open to update country conditions evidence. This has been a long time since the original hearing. There are questions that probably in this case need to be resolved anew by the immigration judge. And that's not giving the government a second bite of the apple. It's just provide – there are disputed questions, I would expect, on the merits of the case that would have to be resolved by the immigration judge. And therefore, that's where we say that. I mean, if that's where it's ultimately heading, why couldn't we just say that the BIA's decision isn't supported and it – Well, we would suggest – I mean, the court could use this – It has to go back for further development somewhere. Yeah. The court could do what it did in the Ballwinder Singh case that was cited in the most recent 28J letter. That's at 491 F3D 1019. There – there was a similar question about credibility. And on page 1027, the board said – I mean, the court said alternately the board can accept the testimony as true. You know, it suggests the possibility of a remand to the immigration judge. So what we would suggest the court does is that the court resolve the asylum determination. We submit it has to do that because if it finds that it lacks jurisdiction, it can't remand. It must dismiss. But the court should, you know, resolve that. And then on the withholding claim, just send the whole thing back for the agency and the parties to figure out what's actually going on in this case. Okay. Thank you very much. Thank you. I'd just like to quickly address the issue of credibility. The board shouldn't get another chance to decide this because not only would they have a second chance, they already had a second chance. We had a follow-up motion to reconsider. And they declined again to state whether they expressly affirmed or expressly found him credible or not credible. So, therefore, they already had two chances. So there's no, it would be wholly unfair to give them another chance. And we agree with the government's position that's entirely unclear here. And based on the case law, he should be found credible. Under Cateria, it says absent explicit finding of credibility, petitioner's testimony should be true. And this is echoed in LADA as well. If the board simply says assuming credibility without making an adverse credibility finding, then the petitioner's testimony should be considered true as well. So, therefore, the government shouldn't have another chance to address this issue. Thank you. The matter just argued is submitted. The Court does, speaking for this member of the Court, appreciates the government's willingness to confront the problems in the record in the case. Thank you.
judges: Schroeder, Noonan, Callahan